UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| KENNY A. JONES, SR., <br>     Plaintiff, <br><br> v. <br><br> CITY OF ELKHART, et al., <br>     Defendants. | CAUSE NO.: 2:10-CV-402-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Plaintiff's Verified Motion to Reconsider Magistrate's Entry Denying Plaintiff's Motion to Compel Discovery [ECF No. 48], filed on May 3, 2012.

**BACKGROUND**

The Plaintiff, Kenny A. Jones, Sr., has sued the City of Elkhart and several officers of the City of Elkhart Police Department, alleging violations of his Fourth and Fourteenth Amendment rights. In the Introductory Statement of his Complaint he states:

> This is an action for damages sustained by Kenny A. Jones, Sr. a black citizen of the United States against police officers of the City of Elkhart, Police Department, who early on the morning of October 22, 2008, unlawfully stopped and unlawfully seized plaintiff without probable cause, unlawfully searched without probable cause, assaulted, conspired, handcuffed, impounded Plaintiff's vehicle, transported Plaintiff to police department, charged, processed, and unlawfully imprisoned and held Plaintiff without bond for a period of more than ten (10) hours, caused him to be prosecuted . . . . And against the Chief of Police of the Elkhart Police Department as the supervisory officer responsible for the conduct of the defendants to assure proper training or to implement meaningful procedures to discourage lawless official conduct and against the City of Elkhart as the employer of the police personnel who are sued as persons under 42 U.S.C. § 1983.

(Compl. ¶ 1, ECF No. 1.)

As grounds for these claims, the Plaintiff alleges that on October 22, 2008, Defendant Chris Snyder stopped his vehicle without probable cause. The Plaintiff asserts that he was not speeding and there was no outstanding warrant for his arrest. He maintains that Defendant Snyder searched him without probable cause and in violation of the Fourth Amendment, forcibly removed his headwear, and twisted his arm behind his back to put him in handcuffs. He further claims that Defendant Snyder and another officer who arrived at the scene, Officer Bryan Moore, conspired to deprive him of his constitutional rights under the Fourth and Fourteenth Amendments based on racial animus. He alleges that Defendant Snyder maliciously and without probable cause executed a criminal Information against him for speeding and operating a vehicle while intoxicated and caused his vehicle to be impounded. He alleges that Defendant Jeff Gorball, who was present at the jail, maliciously and without probable cause recorded that the Plaintiff refused to deliver a breath sample for a breathalyzer test to determine his blood alcohol content. Finally, the Plaintiff's Complaint states:

> On information and belief, the violation of plaintiff's Fourth and Fourteenth Amendment rights by the defendants was consistent with an institutionalized practice of the City of Elkhart Police Department, which was known to and ratified by defendant City of Elkhart, the defendants acted with deliberate indifference, having at no time taken effective action to prevent Elkhart Police Personnel from continuing to engage in such conduct, including stopping of citizens without probable cause based on race.

(Compl. ¶ 53.)

On January 16, 2012, the Defendants moved for summary judgment [ECF No. 26] on all of the Plaintiff's claims.[1] The Plaintiff did not file a response to the Motion for Summary

---

[1] The Defendants' Motion addressed the claim of an "institutionalized practice" by the Elkhart Police Department as a claim against the City for Fourth Amendment violations under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The Defendants argued that because a local government cannot be held liable for a constitutional deprivation allegedly brought about

Judgment but, on February 1, filed a Verified Motion for Order Compelling Discovery and Disclosure [ECF No. 31], which he subsequently supplemented and amended. The Plaintiff's counsel maintained that the discovery at issue—reports of warrantless arrest, records of motor vehicle traffic stops, and all paper and electronically stored traffic citations involving the Elkhart Police Department from 2000 through 2011—is "critical to Plaintiff's claim that defendants engaged in racial profiling." (Decl. of Douglas M. Grimes Att'y for Pl. ¶ 22, ECF No. 37.) He stated that the information is required "to obtain expert opinion based on statistical data to show a violation of the Equal Protection Clause, and that the defendants' actions had a discriminatory effect on plaintiff and were motivated by discriminatory purpose." (*Id.* ¶ 25.) *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. . . . [T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause."); *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001). On April 19, Magistrate Judge Paul Cherry entered an Order [ECF No. 43], denying the Plaintiff's request to compel access to the City of Elkhart's IDACS (Indiana Data and Communications System) or NCIC (National Crime Information Center) systems to view electronic reports because to do so would be to compel the Defendants to act in a manner contrary to the laws protecting these databases. The magistrate judge also denied the Plaintiff's request to compel the production of additional paper records. The court stated that, although the Plaintiff was not satisfied with the production of a compact

---

through an official policy or custom if the plaintiff did not first suffer a constitutional violation, and the Plaintiff's claims against the individual officers are without merit, the City of Elkhart and the Elkhart Police Department cannot be liable. In the alternative, the Defendants argued that the Plaintiff has not established the existence of any unconstitutional custom, policy, or practice. The Defendants' Motion for Summary Judgment did not address any claim of racial profiling as a separate and distinct claim under the equal protection clause.

3

disc containing the records of traffic stops that did not result in an arrest, there was no evidence that additional information through another format was available. Thus, there was nothing to compel with regard to his request for records of traffic stops. With regard to paper copies of electronically stored police documents regarding warrantless arrests from 2000 to 2011, the court noted the Defendants' willingness to provide such copies upon the Plaintiff's payment of $0.10 per page, as well as the Defendants' attempts to provide limited discovery to help the Plaintiff narrow his request and thus limit the volume of paper produced.

On May 3, 2012, the Plaintiff filed a Verified Motion to Reconsider Magistrate's Entry Denying Plaintiff's Motion to Compel Discovery [ECF No. 48]. The Defendants have responded [ECF No. 51], and the Plaintiff has filed a Reply [ECF No. 55].

## ANALYSIS

Pursuant to Federal Rule of Civil Procedure 72(a), a party may serve and file objections to a magistrate judge's order pertaining to a non-dispositive pretrial matter within 14 days after being served with a copy of the order. Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A) (providing for reconsideration by district court judge of any pretrial matter designated to a magistrate "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"). Rule 72(a) grants magistrate judges great latitude in resolving non-dispositive matters, like the one at issue here. "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been

4

made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). "Under the 'contrary to law' standard, the district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard," *Jensen v. Solvay Chem., Inc.*, 520 F. Supp. 2d 1349, 1351 (D. Wyo. 2007), or if it "misapplie[d] relevant statutes, case law, or rules of procedure," *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y.2006) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

### A.     Electronic Databases

In response to the Plaintiff's request to view the Defendants' electronic records, the Defendants asserted that the Plaintiff's counsel could not be permitted to access the police department's computer records because he was not IDACS and NCIC certified, and allowing him to access the system without such certifications would violate Indiana and federal law, and would constitute a breach of the City of Elkhart's agreements with IDACS and NCIC. The Defendants cited 240 Indiana Administrative Code § 5-2-10(h)(5), which provides that "[t]he IDACS committee shall make checks as necessary concerning inquiries made of the SYSTEM to detect possible misuse," and 28 U.S.C. § 534(b), which provides that "[t]he exchange of records and information authorized by subsection (a)(4) of this section is subject to cancellation if dissemination is made outside the receiving departments or related agencies."

The Plaintiff, in his Verified Motion to Reconsider, argues that allowing him access to the electronic records would not violate the laws the Defendants cited. With respect to the Indiana Administrative Code, he contends that his access is not prohibited because he would not

5

be making any inquiries of the system, but would only be "view[ing] relevant documents on the system that have been viewed and manipulated by defendant Police Department personnel and placed on CDs." (Verified Mot. to Recons. 30, ECF No. 48.)[2] Title 240, Article 5, Rule 2, Section 10 of the Indiana Administrative Code puts measures in place to protect the security and confidentiality of a system comprised of IDACS and NCIC terminals, equipment, and data. Various provisions point to the inappropriateness of allowing the Plaintiff's counsel to view the electronically stored data. *See, e.g.*, 240 Ind. Admin. Code § 5-2-10(b) ("Access, meaning the ability to obtain information from the system, shall be permitted only to criminal justice agencies in the discharge of their official mandated responsibilities, and those agencies as required by state and/or federal enabling authority."); *id.* § 5-2-10(h)(2) ("Research data shall be provided off line only."); *id.* § 5-2-10(h)(3) ("Upon verification that any agency has received criminal history information and has disclosed that information to an unauthorized source, immediate action shall be taken by the IDACS committee. Unauthorized use of criminal history information shall result in imposed sanctions."); *id.* § 5-2-10(j)(1)(A) ("All computer sites accessing SYSTEM data shall have the security to protect against any unauthorized access to any of the stored data and/or the computer equipment."). Under these provisions, the Court finds no merit in the Plaintiff's attempted distinction between making an "inquiry" of the system and "viewing" data on the system. They are both prohibited access and thus cannot be compelled.

Under federal statute, the Attorney General is directed to collect and preserve criminal records and may exchange these records and information with cities for their official use. 28

---

[2] The Plaintiff's allegation that the Defendants have "manipulated" information provided to him on the CD is unclear and is not supported by the record. There is no evidence that the information is incomplete or inaccurate. To the extent the accusation of manipulation is intended as a basis for allowing him access to the same records electronically, it is a nonstarter.

U.S.C. § 534. However, if "dissemination is made outside the receiving departments," this exchange of records and information is "subject to cancellation." *Id.* § 534(b). The Plaintiff argues that he does not intend to "exchange records or information in violation of . . . § 534." (Verified Mot. to Recons. 30.) This argument misunderstands the statute. It is the Attorney General's exchange of information with the City of Elkhart that is subject to cancellation—upon the dissemination of the information outside the police department. The Plaintiff's arguments do not convince this Court that the magistrate judge's denial of the request to compel the Defendants to allow the Plaintiff to use the Defendants' computer terminals to access electronic criminal databases was clearly erroneous or contrary to law.

### B. Paper Copies of Electronically Maintained Records

The Defendants have noted their willingness to provide the Plaintiff with the records of warrantless arrests and traffic citations in paper format, on the condition that the Plaintiff pay for the cost of copying these reports. The Defendants argue that pre-payment is necessary to protect the taxpayers of Elkhart due to the volume of the records and the time required to gather the requested documents. In addition, given the volume of documents that are responsive to the Plaintiff's request, the Defendants have proposed methods by which counsel for the Plaintiff may be able to narrow his requests, including providing samples of records, spreadsheets summarizing information in the electronic reports, and electronic copies of some of the records where feasible. The Plaintiff, in his appeal of the magistrate judge's order, argues that the pre-payment requirement is not authorized by the Federal Rules of Civil Procedure, violates the Plaintiff's substantive due process rights, and violates his right to the discovery of information

reasonably calculated to lead to the discovery of admissible evidence, namely, a pattern of behavior pertaining to racial profiling. The Plaintiff does not address the Defendants' proposed alternative means to provide relevant data.

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Discovery is relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* In this context, relevancy encompasses "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Nevertheless, Rule 26 provides for limits on the frequency or extent of discovery if the Court determines that

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(iii). "District courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646–47 (7th Cir. 2001); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)).

The Plaintiff's discovery request encompasses records for 59,092 arrests and 120,862 citations. The Defendants provided, as a sampling, a spreadsheet containing the name, sex, race, age and address of the arrestee, the nature of the arrest, and the date of the arrest for the first through fifth of each month in 2005, and a CD of the full arrest reports. In response to the

request for records of all traffic stops from 2000 to 2011 that did not result in arrests or citations, the Defendant provided a CD containing more than 7,000 pages of printouts. Although the Plaintiff prefers that he be allowed to view all electronic documents so that he can select which reports be copied, this insistence on only one method ignores the legal implications, set forth above, of allowing counsel access to the electronic terminals and databases. In his Reply, the Plaintiff appears to back down from his insistence on viewing electronic documents as the only means of discovery, and instead submits that the Defendants have not been entirely truthful in their position that arrest reports are created and maintained electronically as part of the IDACS system. He argues that because police officers type the information for arrests and citations on a computer, they are put into existence, or created, by those officers and not by the computer. He states that only a "copy of the report is maintained on a computer electronically." (Verified Reply 13, ECF No. 55.) It is unclear what importance this distinction has for discovery purposes. The Plaintiff argues that "[a] reasonable jury could conclude that defendants have something to hide." (*Id.*) The Court finds this statement—whether true or not—to be irrelevant.

When considering the needs of this case as whole, including the importance of the racial profiling claim to this litigation, the Court finds that the burden that mandated production will place on the Defendants outweighs its likely benefit. The Court finds reasonable the implication in the magistrate judge's ruling that the Defendants should not be required to pay for the costs of producing such voluminous records where the Plaintiff has not shown why the measures suggested by the Defendants for reducing the financial burden are insufficient to provide him with the relevant statistical data. Although the magistrate judge's Order did not explicitly discuss the needs of the case or the importance of the racial profiling claim, this Court now modifies the

9

record with such a discussion, which acts to further bolster the decision to deny the Plaintiff's Motion to Compel. The evidence at issue goes to only one of multiple claims, a claim that is based only on a broad, conclusory allegation that the Plaintiff's Fourth and Fourteenth Amendment rights were violated by an institutionalized practice of the City of Elkhart that "includ[es] stopping of citizens without probable cause based on race." (Compl. ¶ 53.) The Court considers the weakness of the racial profiling allegation when applying its broad discretion to this discovery dispute.

Although the Plaintiff has sufficiently pled facts in support of his Fourth Amendment claims, he has not provided "enough facts to raise a reasonable expectation that discovery will reveal evidence," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), supporting an equal protection racial profiling claim. Legal conclusions must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The entirety of paragraph 53 of the Complaint is nothing more than a "formulaic recitation of the elements," *Twombly*, 550 U.S. at 555, of a constitutional discrimination claim against a municipality:

> On information and belief, the violation of plaintiff's Fourth and Fourteenth Amendment rights by the defendants was consistent with an institutionalized practice of the City of Elkhart Police Department, which was known to and ratified by defendant City of Elkhart, the defendants acted with deliberate indifference, having at no time taken effective action to prevent Elkhart Police Personnel from continuing to engage in such conduct, including stopping of citizens without probable cause based on race.

(Compl. ¶ 53.) Like the complaint allegations at issue in *Iqbal*, 556 U.S. at 680–81, these bare assertions are not entitled to the assumption of truth. In *Iqbal*, the Supreme Court stated that allegations that petitioners "knew of, condoned, and willfully and maliciously agreed to subject him" to harsh conditions of confinement "as a matter of policy, solely on account of his religion,

race, and/or national origin and for no legitimate penological interest" and that certain defendants were the "principal architect" or "instrumental" in adopting and executing it were bare assertions that were not entitled to an assumption of truth. 556 U.S. at 680–81 (brackets and citations omitted). Likewise, in *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011), the Seventh Circuit held that many of the alleged "facts" in support of an equal protection claim were actually legal conclusions or element of a cause of action. For example, the plaintiff alleged that the city had "an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence" and that there was "no rational basis" for this purported policy. *Id.* Similarly, the plaintiff alleged:

> [The City], through its agents, employees and/or servants, acting under color of law, at the level of official policy, practice, and custom, with deliberate, callous, and conscious indifference to McCauley's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint, [the City] had interrelated *de facto* policies, practices, and customs.

*Id.* (brackets in original). The *McCauley* court disregarded these legal elements, which "contribute[d] nothing to the plausibility analysis under *Twombly/Iqbal*." *Id.* at 618.

Here, the Plaintiff's Complaint, to sufficiently allege an equal protection claim, was required to contain facts giving rise to a plausible inference, either through direct, circumstantial, or statistical evidence, that the Plaintiff was a target of racial profiling. *See United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000). Such a claim requires that the actions of the defendants had a discriminatory effect on the Plaintiff and that the defendants were motivated by a discriminatory purpose, that is, racial considerations played a part in the Defendants' stop, detention, search, and arrest of the Plaintiff. *See Chavez*, 251 F.3d at 635–36, 645; *see also Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003) ("To withstand a

11

motion for summary judgment, a plaintiff in a § 1983 suit challenging alleged racial discrimination in traffic stops and arrests must present evidence from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect."). Discriminatory effect requires a showing "that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class." *Chavez*, 251 F.3d at 636 (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000), *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 944–45 (7th Cir. 1996)). To show discriminatory intent, a plaintiff must demonstrate that "decisionmakers in [his] case acted with discriminatory purpose." *Id.* at 645 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and citing *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)). This requires "more than intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of' its adverse effects upon an identifiable group.'" *Id.* (quoting *McCleskey*, 481 U.S. at 298, *Pers. Adm'r of Mass. v. Feeney*, 422 U.S. 256, 279 (1979)) (ellipses omitted).

     Going back to the Complaint, the Plaintiff's only factual allegation with respect to his claim of racial profiling is that he was stopped despite the fact that he was not exceeding the speed limit or, presumably, exhibiting signs of intoxication (since he alleges that the charge for driving while intoxicated was entered maliciously and without reasonable or probable cause). These allegations support a Fourth Amendment claim, but do not state a plausible claim of a practice or policy of stopping motorists regardless of probable clause because they are black. That is, he has not asserted enough facts to "raise a reasonable expectation that discovery will

reveal evidence" in support of racial profiling. *Twombly*, 550 U.S. at 556. "Police officers and departments should not lightly be put to the expense and risk of trial on charges of racial discrimination that may be easy to make and difficult to disprove." *Marshall*, 345 F.3d at 1167. When the bare allegation of the Plaintiff's Complaint are weighed against the burden of providing discovery for more than ten years of records for traffic stops, warrantless arrests, and citations, shifting the financial consequences of the request cannot be considered clearly erroneous or contrary to law.

### C. Motion for Summary Judgment

The Plaintiff has not responded to the Defendants' January 16, 2012, Motion for Summary Judgment. The Plaintiff claims that the discovery at issue is necessary to establish an equal protection violation based on racial profiling. With respect to the summary judgment motion, he further asserts:

> A careful reading of defendants' summary judgment motion demonstrates that defendants orchestrated a perfect storm that led to the summary judgment filing. First, through their total and absolute refusal to produce the documents required to justify opposition to the motion they were drafting that completely ignores plaintiff's claim of racial profiling. Second, a sudden willingness to produce all of the requested documents. Presumably, the original paper document as well electronic files that were constructed from the original paper documents, which the defendants did not know that they possessed, for a fee. To be paid in advance, sight unseen, prior to inspection and selection by Plaintiff of documents relevant to his claims.

(Decl. of Douglas M. Grimes ¶ 29, ECF No. 37.) According to the Plaintiff's counsel, the Defendants purposefully ignored his claim of racial profiling when filing their Motion for Summary Judgment, and also refused to provide him the discovery necessary to establish such a claim. The Defendants cannot obtain judgment on a claim that they have not included in their

13

Motion for Summary Judgment and it is thus difficult to see any strategic advantage in purposefully ignoring a known claim. Having reviewed the Complaint and the Motion for Summary Judgment, the Court finds that the more likely reason for the absence of an equal protection analysis is the Complaint's failure to put the Defendants on notice that the Plaintiff was asserting such a claim. In any event, the Defendants' reason for failing to include the claim in their Motion for Summary Judgment is not important. What matters is what the Motion does address—the Plaintiff's Fourth Amendment claims for false arrest, excessive force, and unlawful search, and his conspiracy claim. The information the Plaintiff seeks in his Motion to Compel is not relevant to these claims. *See Whren*, 517 U.S. at 813 (holding that the constitutional reasonableness of a traffic stop does not depend on the subjective motivations of the individual officer involved); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (stating that excessive force claims in the context of an arrest are reviewed under the Fourth Amendment's reasonableness standard). With regard to these claims, the Plaintiff has not explained his failure to respond to the Defendants' January 16, 2012, Motion for Summary Judgment, or requested additional time. *See, e.g.,* Fed. R. Civ. P. 56(d) (providing that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may defer consideration of the motion, allow time for discovery, or issue any other appropriate relief). Any dispute surrounding the production of documents pertaining to an equal protection claim cannot justify the continued delay of the summary judgment briefing on the core claims of this litigation.[3] It is reasonable,

---

[3] Moreover, a decision on the Fourth Amendment claims may prompt a more efficient resolution of the equal protection claim as the Plaintiff appears to hinge his assertion of racial profiling, in part, on the fact that his traffic stop and arrest occurred without any probable cause.

under the circumstance of this case, to require that litigation of the claims addressed in the Defendants' Motion for Summary Judgment proceed regardless of any ongoing discovery related to an equal protection claim.

## CONCLUSION

For the reasons stated above, the Court DENIES the Verified Motion to Reconsider [ECF No. 48]. Further, to promote the efficient administration of this litigation, the Court now DIRECTS the Plaintiff to respond to the Defendants' Motion for Summary Judgment by July 2, 2012. The Defendants will have an opportunity to reply in accordance with the Federal Rules of Civil Procedure. The disputes surrounding the equal protection racial profiling claim are not included in the summary judgment motion currently before the Court, and there is no dispositive motion deadline in place. If necessary, the Court will set a dispositive motion deadline concerning the racial profiling claim at a later date.

SO ORDERED on June 5, 2012.

                                                    s/ Theresa L. Springmann
                                                    THERESA L. SPRINGMANN
                                                    UNITED STATES DISTRICT COURT
                                                    FORT WAYNE DIVISION